**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1907

MOISES CRUZ CRUZ,

        Petitioner,

    v.

MERRICK B. GARLAND, Attorney General,

        Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: May 4, 2023                                          Decided: June 22, 2023

Before THACKER and HEYTENS, Circuit Judges, and KEENAN, Senior Circuit Judge.

Petition for review denied by unpublished per curiam opinion. Judge Keenan wrote a dissenting opinion.

**ARGUED:** Paulina Nicole Vera, Washington, D.C.; Cornelia Waugh, GEORGE WASHINGTON UNIVERSITY SCHOOL OF LAW, Washington, D.C., for Petitioner. William Clark Minick, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Alberto Benitez, The Jacob Burns Community Legal Clinics, THE GEORGE WASHINGTON UNIVERSITY, Washington, D.C., for Petitioner. Brian M. Boynton, Principal Deputy Assistant Attorney General, Melissa K. Lott, Senior Litigation Counsel, Office of Immigration Litigation, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

1

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Moises Cruz Cruz ("Petitioner") seeks review of the decision of the Board of Immigration Appeals ("BIA") finding him ineligible for cancellation of removal. Because we find that Petitioner's prior conviction for falsely identifying himself to a law enforcement officer in violation of Va. Code section 19.2-82.1 is a crime involving moral turpitude ("CIMT"), we deny the petition for review.

I.

Petitioner is a native and citizen of Mexico who entered the United States without authorization on or about June 1, 2000. On April 16, 2013, Petitioner was pulled over by a police officer for driving through a gas station parking lot to avoid a crowded intersection. The officer asked Petitioner, in "incoherent Spanish," to provide his name. J.A. 28.[1] Petitioner responded that his name was "Moises Celio Cruz." *Id.* Then, in English, the officer repeated his request for Petitioner's name and Petitioner "immediately knew there was a misunderstanding." *Id.* Petitioner responded, "let me write down my full name for you because you don't understand," and then wrote down his correct name -- Moises Cruz Cruz -- and his correct date of birth. *Id.* The officer arrested Petitioner for providing false identification to a police officer in violation of Va. Code section 19.2-82.1. Petitioner entered a guilty plea to that offense.

On May 29, 2013, the Department of Homeland Security ("DHS") issued a Notice to Appear, charging Petitioner with being removable pursuant to 8 U.S.C.

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties to this appeal.

3

§ 1182(a)(6)(A)(i). Petitioner admitted the factual allegations in the Notice to Appear and conceded removability. But Petitioner applied for Cancellation of Removal pursuant to 8 U.S.C. § 1229b(b). At the merits hearing on Petitioner's application, DHS moved to pretermit Petitioner's application for cancellation of removal, arguing that he was ineligible because his conviction for providing a false identification to law enforcement was a CIMT.

On June 10, 2019, the Immigration Judge ("IJ") denied Petitioner's application for cancellation of removal based on a determination that his conviction was a CIMT. The IJ determined that Va. Code section 19.2-82.1 is a categorical match for both the requisite mental state and reprehensible conduct elements of a CIMT. Petitioner appealed the IJ's decision to the BIA. On August 3, 2022, the BIA -- in a decision issued by a single member -- agreed with the IJ that Va. Code section 19.2-82.1 is a CIMT and dismissed the appeal. Petitioner timely filed for review of the BIA decision.

II.

Where, as here, the BIA adopts or incorporates some of immigration judge's decision and supplements with its own reasoning, we review both decisions. *See Hernandez-Avalos v. Lynch*, 784 F.3d 944, 948 (4th Cir. 2015). Whether an offense is a CIMT is a question of law we review de novo. *See Nunez-Vasquez v. Barr*, 965 F.3d 272, 278–79 (4th Cir. 2020).

Determining whether an offense is a CIMT "requires us to answer 'two interpretative questions.'" *Salazar v. Garland*, 56 F.4th 374, 377 (4th Cir. 2023) (quoting *Nunez-Vasquez*, 965 F.3d at 279). "First, we determine what 'moral turpitude' means in

4

the Immigration and Nationality Act, deferring under *Chevron*[2] to the agency's reasonable construction of the term. Second, we determine whether the Virginia statute necessarily involves morally turpitudinous conduct." *Id.* We do not defer to the BIA on the second question. *Salazar*, 56 F.4th at 377.

As to the BIA's interpretation of "moral turpitude," "nonprecedential opinions by the BIA do not carry the force of law and, thus, are ineligible for *Chevron* deference." *Nunez-Vasquez*, 965 F.3d at 279 (citations omitted). Precedential BIA opinions must be issued by a three-member panel. *See* 8 C.F.R. § 1003.1(g). Nevertheless, "when single-member, nonprecedential BIA opinions rely on a precedential BIA opinion, we determine whether the *precedential* opinion is apposite and warrants deference." *Nunez-Vasquez*, 965 F.3d at 279 (emphasis in original) (citations omitted).

III.

The question on appeal is whether Va. Code section 19.2-82.1 is a CIMT. The statute provides as follows:

> [a]ny person who falsely identifies himself to a law-enforcement officer *with the intent to deceive the law-enforcement officer* as to his real identity after having been lawfully detained and after being requested to identify himself by a law-enforcement officer, is guilty of a Class 1 misdemeanor.

---

[2] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

5

Va. Code § 19.2-82.1 (2006) (emphasis supplied). Because the statute requires an intent to deceive a law enforcement officer, the IJ and the BIA determined that Va. Code section 19.2-82.1 is a CIMT.

A.

The BIA's decision was issued by a single member, so it is not precedential. But the BIA relied on two precedential decisions for its interpretation of the term "moral turpitude." Therefore, at the first step of our analysis, we must determine whether those opinions are apposite and entitled to deference.

As this court has recognized, the BIA defines "moral turpitude" as behavior "that shocks the public conscience as being inherently base, vile, or depraved." *Ramirez v. Sessions*, 887 F.3d 693, 704 (4th Cir. 2018) (internal quotation marks omitted) (citation omitted). In its decision in this case, the BIA relied on its precedential decisions in *Matter of Flores*, 17 I. & N. Dec. 225, 228-230 (BIA 1980) and *Matter of Jurado-Delgado*, 24 I. & N. Dec. 29 (BIA 2006).

In *Matter of Flores*, the BIA determined that a conviction for falsifying immigration papers under 18 U.S.C. § 1426(b) qualified as a CIMT. 17 I. & N. Dec. at 225. The statute at issue there required that the petitioner "knowingly, willfully, and unlawfully conspire[d] to commit an offense against the United States" by "uttering and selling false and counterfeit papers relating to registry of aliens." *Id.* at 226. Though the offense did not specifically require an intent to defraud, the BIA noted that "fraud [may be] inherent in an offense" and that "crimes in which fraud [is] an ingredient have always been regarded as

6

involving moral turpitude." *Id.* at 228 (citations omitted). The BIA held that the statute was a CIMT, reasoning as follows:

> In cases where fraud of the government has been charged, we have held that the government need not have been cheated out of money or property in order for the crime to involve moral turpitude. *It is enough to impair or obstruct an important function of . . . the government by defeating its efficiency or destroying the value of its lawful operations by deceit, graft, trickery, or dishonest means.*

*Id.* at 229 (emphasis supplied).

Similarly, in *In re Jurado-Delgado*, the BIA determined that a conviction for making false statements to a government official "with intent to mislead a public servant in performing his official function" involved moral turpitude. 24 I. & N. Dec. at 33–35 (citation omitted). In rejecting the petitioner's argument that the misleading statements were not made under oath and so could not be morally turpitudinous, the BIA held that "it is the intent to mislead that is the controlling factor." *Id.* at 35.

Though Petitioner's arguments to this court did not specifically address these decisions, Petitioner argues generally that fraud is a distinct legal concept from deceit. This may be true, but the decisions above are not limited to cases involving fraud. Rather, the BIA made clear that for purposes of being a CIMT, "[i]t is enough to impair or obstruct an important function of a department of the government by defeating its efficiency or destroying the value of its lawful operations by deceit, graft, trickery, or dishonest means." *Matter of Flores*, 17 I. & N. Dec. at 229. And the offense at issue in *In re Jurado-Delgado* did not include fraud as an element. *See* 24 I. & N. Dec. at 34–35. Instead, it prohibited

7

making false written statements "with intent to mislead a public servant in performing his official function." *Id.*

These cases are apposite and are entitled to *Chevron* deference. Therefore, in determining whether Va. Code section 19.2-82.1 is a CIMT, we defer to the BIA's reasonable interpretation that "impair[ing] or obstruct[ing] an important function of a department of the government . . . by deceit, graft, trickery, or dishonest means is a [CIMT]." *Matter of Jurado-Delgado*, 24 I. & N. Dec. at 35 (citing *Matter of Flores*, 17 I. & N. Dec. at 229). Indeed, an "intent to mislead . . . is the controlling factor." *Matter of Jurado-Delgado*, 24 I. & N. Dec. at 35.

B.

The next "interpretative question" is whether the offense, Va. Code section 19.2-82.1, is a CIMT. *Salazar*, 56 F.4th at 377.

1.

"We apply the categorical approach to determine whether a state offense qualifies as a [CIMT], looking to the elements of the offense rather than the noncitizen's particular conduct." *Salazar*, 56 F.4th at 377 (citing *Martinez v. Sessions*, 892 F.3d 655, 658 (4th Cir. 2018)). An offense qualifies as a CIMT "only if the statute's elements are the same as, or narrower than, those of the generic offense." *Descamps v. United States*, 570 U.S. 254, 257 (2013). "Under this approach, a crime does not involve moral turpitude if there is a 'realistic probability' that the statute of conviction could 'be applied to reach conduct that does not involve moral turpitude.'" *Cabrera v. Barr*, 930 F.3d 627, 636 (4th Cir. 2019) (citation omitted). In other words, if the "least culpable conduct" that could reasonably be

8

criminalized by the statute is not morally turpitudinous, then the offense is not a CIMT. *Salazar*, 56 F.4th at 378–79; *see also Ramirez*, 887 F.3d at 704 (explaining that an offense is a CIMT "if even the minimum conduct needed to violate the state statute would involve moral turpitude").

2.

The generic definition of a CIMT requires "two essential elements: a culpable mental state and reprehensible conduct." *Nunez-Vasquez*, 965 F.3d at 282 (citations omitted). The culpable mental state requires "an intent to achieve an immoral result or willful disregard of an inherent and substantial risk that an immoral act will occur." *Salazar*, 56 F.4th at 378 (quoting *Ramirez*, 887 F.3d at 704). Thus, we have explained that "a *mens rea* of at least recklessness is required." *Granados v. Garland*, 17 F.4th 475, 481 (4th Cir. 2021). Because Va. Code section 19.2-82.1 requires making a false statement "with the intent to deceive the law-enforcement officer," the mens rea element is easily satisfied. Therefore, we turn our attention to whether the offense meets the actus reus requirement of "morally reprehensible conduct." *Salazar*, 56 F.4th at 378.

The BIA defines "moral turpitude" as reprehensible behavior "that shocks the public conscience as being inherently base, vile, or depraved." *Ramirez*, 887 F.3d at 704 (citations omitted). "To meet the reprehensible conduct element, the crime 'must involve conduct that not only violates a statute but also independently violates a moral norm.'" *Nunez-Vasquez*, 965 F.3d at 282 (citations omitted). We have previously considered this element in two relevant cases, taking into account the BIA's interpretation of "moral turpitude" described above.

9

First, in *Ramirez*, we held that the Virginia obstruction of justice statute, which does not require the use of fraud or deceit, was not a CIMT. 887 F.3d at 704–05. We explained that "an act of obstruction, standing alone, does not categorically involve moral turpitude. . . . In other words, there must be some other aggravating element that pushes a mere violation of the law into the territory of moral depravity." *Id.* at 704. Of particular importance here, we explained that Virginia's general obstruction statute "does not require the use of fraud or deceit" "[u]nlike the statute the BIA considered in [*In re*] *Jurado–Delgado*." *Id.* We also noted that "*deceit* was the critical aggravator that rendered an obstruction offense a CIMT" in *In re Jurado-Delgado*. *Id.* at 702 (emphasis supplied).

The second relevant case is *Nunez-Vasquez*. There, we considered whether Virginia's identity theft statute is a CIMT. 965 F.3d at 283–85. That statute made it unlawful "for any person to use identification documents or identifying information of another person, whether that person is dead, or alive, or of a false or fictitious person, to avoid summons, arrest, prosecution, or to impede a criminal investigation." *Id.* (quoting Va. Code § 18.2-186.3(B1)). In holding that the offense was not a CIMT we explained, "unlike the statutes at issue in *Matter of Flores* and [*In re*] *Jurado-Delgado*, Va. Code Ann. § 18.2–186.3(B1) does not require perpetrators *to intend to impair or obstruct a government function through deceit* because an individual can violate the statute by misleading a private person." *Nunez-Vasquez*, 965 F.3d at 284 (emphasis supplied). Then, citing the very statute at issue here, we noted, "[i]ndeed, it is a separate crime to 'falsely identif[y] [oneself] to a law-enforcement officer with the intent to deceive the law-

10

enforcement officer as to his real identity.'" *Id.* (quoting Va. Code § 19.2-82.1) (alterations in original).

Considering our precedent along with the BIA's interpretation of "moral turpitude," we have no choice but to conclude that Va. Code section 19.2-82.1 is a CIMT. The statute requires that one "falsely identifies himself to a law-enforcement officer *with the intent to deceive the law-enforcement officer* as to his real identity after having been lawfully detained and after being requested to identify himself." Va. Code § 19.2-82.1 (emphasis supplied). Though "obstruction, standing alone, does not categorically involve moral turpitude," the aggravating factor identified by both this court and the BIA that "pushes [the] mere violation of the law into the territory of moral depravity" is "the use of fraud or deceit." *Ramirez*, 887 F.3d at 704. Indeed, "the intent to mislead [] is the controlling factor." *In re Jurado-Delgado*, 24 I. & N. Dec. at 35.

Petitioner attempts to escape this conclusion by claiming now that he gave the wrong name "in a moment of heightened nerves" and then "immediately corrected this," and, therefore, his conduct did not involve moral turpitude. Opening Br. at 17–18. Petitioner's *description* of his conduct would not make him guilty of violating Va. Code section 19.2-82.1. But Petitioner *pled guilty* to violating Va. Code section 19.2-82.1. This presents a problem Petitioner cannot overcome. The categorical approach requires us to consider whether "even the minimum conduct needed to violate the state statute would involve moral turpitude." *Ramirez*, 887 F.3d at 704. The facts before us are that Petitioner pled guilty to all of the elements of Va. Code section 19.2-82.1, including its requirement that he act with an "intent to deceive the law enforcement officer." There is nothing in the

11

record that convinces us that Virginia has expanded its definition of "intent to deceive" to include conduct that, in fact, lacks that intent. And because the intent to deceive element makes a violation of this statute morally turpitudinous, we conclude that even the least culpable conduct that has a realistic probability of being prosecuted pursuant to Va. Code section 19.2-82.1 is morally turpitudinous.

IV.

We are sympathetic to Petitioner's plight. But the law is clear -- Va. Code section 19.2-82.1 is a CIMT.

*PETITION FOR REVIEW DENIED*

12

BARBARA MILANO KEENAN, Senior Circuit Judge, dissenting:

In my view, the majority's analysis fails because it never explains why the act of giving a false name to a police officer with the intent to deceive is so egregious that it "shocks the public conscience as being inherently base, vile, or depraved." *Ramirez v. Sessions*, 887 F.3d 693, 704 (4th Cir. 2018) (citation omitted). I would hold that such misdemeanor activity in Virginia does not necessarily meet this definition and, thus, that this offense does not qualify as a crime involving moral turpitude (CIMT) under the Board of Immigration Appeals' (BIA) definition that must guide our analysis. I respectfully dissent.

Moises Cruz Cruz (petitioner) was convicted in state court for violating Virginia Code § 19.2-82.1 (the false name statute), a misdemeanor that prohibits the act of providing a law enforcement officer with a false name. The majority concludes that this conviction qualifies as a CIMT, barring petitioner from cancellation of removal because the false name statute requires an "intent to deceive" an officer regarding one's real identity. Opi at 2. Notably, however, this statute does not require that the intended deception result in the impairment or obstruction of an important government function, nor does the statute require an intent to harm, or any resulting harm, to another.

At the outset, I agree with the majority that we defer to the BIA's reasonable definition of a CIMT.[3] The BIA defines the term "moral turpitude" as behavior that

---

[3] As the majority observes, a CIMT also must have a culpable mental state of "at least recklessness," Opi at 8 (quoting *Granados v. Garland*, 17 F.4th 475, 481 (4th Cir. (Continued)

13

"shocks the public conscience as being inherently base, vile, or depraved." *Ramirez*, 887 F.3d at 704 (citation omitted); *Uribe v. Sessions*, 855 F.3d 622, 625 (4th Cir. 2017). Thus, a CIMT encompasses "conduct that not only violates a statute but also independently violates a moral norm." *Ramirez*, 887 F.3d at 704; *Uribe*, 855 F.3d at 625. An offense qualifies as a CIMT when it "impair[s] and obstruct[s] a function of a department of government . . . by deceit, graft, trickery, or dishonest means." *Matter of Jurado-Delgado*, 24 I. & N. Dec. 29, 35 (B.I.A. 2006) (citing *Matter of Flores*, 17 I. & N. Dec. 225, 229 (B.I.A. 1980)); *see Ramirez*, 887 F.3d at 703 n.5.

As the majority observes, we recently have considered two Virginia statutes, one involving obstruction of justice and the other involving the use of a false identity, holding that convictions under those statutes did not qualify as CIMTs. *See Ramirez*, 887 F.3d at 705-06; *Nunez-Vasquez v. Barr*, 965 F.3d 272, 286 (4th Cir. 2020). I disagree with the majority regarding the impact of those decisions on the question before us.

In *Ramirez*, we held that a violation of Virginia Code § 18.2-460(A) (the obstruction statute), which prohibits knowingly obstructing a law enforcement officer in the performance of his duties, was not a CIMT. 887 F.3d at 705-06. We observed that this statute did not contain an "aggravating element," like the use of "fraud or deceit" or "threats or force" to complete the obstructive act. *Id.* at 704. Accordingly, we held that a violation of the obstruction statute did not necessarily involve "depravity." *Id.* at 704-05. As we

---

2021)). I agree with the majority's conclusion that a conviction under the false name statute satisfies this mens rea requirement. *Id.*

14

explained, a "refusal[] to comply" with law enforcement cannot alone be "categorically immoral." *Id.* at 705.

In *Nunez-Vasquez*, we concluded that a violation of Virginia Code § 18.2-186.3(B1) (the identity theft statute), which prohibits the use of another's identifying information "to avoid summons, arrest, prosecution, or to impede a criminal investigation," was not a CIMT. 965 F.3d at 284. We held that the identity theft statute did not require an intent to impair or to obstruct a government function, because it could be violated by presenting a false identity to a non-governmental recipient such as a loss prevention officer.[4] *Id.*

Critically, in *Nunez-Vasquez*, we rejected the government's argument that "the use of false identification is reprehensible conduct because it involves deceit." *Id.* at 285 n.8. Although the majority in the present case does not address this portion of *Nunez-Vasquez*, we explained in that decision that "[i]n addition to deception, there must be harm to others, which can include obstructing an important government function." *Id.* (citing *Blanco v. Mukasey*, 518 F.3d 714, 719 (9th Cir. 2008) (holding that giving false identification to a peace officer is not a CIMT because the only "benefit" the individual obtains is to impede law enforcement and not to obtain something tangible), and *Flores-Molina v. Sessions*, 850 F.3d 1150, 1160-65 (10th Cir. 2017) (holding that giving false information to a police

---

[4] The majority appears to find dispositive our statement in *Nunez-Vasquez* that "it is a separate crime to 'falsely identif[y] [oneself] to a law-enforcement officer with the intent to deceive the law enforcement [officer] as to his real identity.'" Opi at 9-10. But this reference to the false name statute merely served to point out that the false name statute involved law enforcement officers, in contrast to the identity theft statute, which applied to interactions with both governmental and private parties. We did not opine in *Nunez-Vasquez* whether the false name statute qualified as a CIMT.

15

officer or city official acting in their official capacity was not a CIMT because it lacked the specific intent to procure a benefit to the detriment of another)).

With our analyses from *Ramirez* and *Nunez-Vasquez* in mind, I turn to consider the offense at issue here and whether it qualifies categorically as a CIMT because the false name statute involves impairing or obstructing "a function of a department of government . . . by deceit, graft, trickery, or dishonest means." *Matter of Jurado-Delgado*, 24 I. & N. Dec. at 35. The false name statute states:

> Any person who falsely identifies himself to a law-enforcement officer with the intent to deceive the law-enforcement officer as to his real identity after having been lawfully detained and after being requested to identify himself by a law-enforcement officer, is guilty of a Class 1 misdemeanor.

Va. Code § 19.2-82.1.

Although the false name statute requires an intent to deceive an officer regarding one's identity, this statute, unlike the obstruction statute at issue in *Ramirez*, does not require or even address whether the individual's conduct must impede an officer in the performance of his duties. *See* 887 F.3d at 704-05. In addition, the false name statute does not require that the defendant intend to deceive the officer concerning his identity for any particular purpose. This stands in stark contrast to the identity theft statute at issue in *Nunez-Vasquez*, which required an intended benefit, namely, "to avoid summons, arrest, prosecution, or to impede a criminal investigation." 965 F.3d at 284 (citation omitted). The false name statute does not require an intent to gain a benefit, or to cause harm to another as a result of the intended deception.

16

The majority nonetheless appears to assume that a violation of the false name statute necessarily results in "obstruction" or impairment of an officer's duties and, thus, concludes that the required "intent to deceive" results in a categorical match as a CIMT. Opi at 10. Perhaps such circumstances represent the typical violation of the false name statute. Importantly, however, the categorical approach demands that "the *minimum* conduct needed to violate the state statute" involve moral turpitude. *Ramirez*, 887 F.3d at 704 (emphasis added).

One need only consider a lawfully licensed teenage driver who, restricted by his parents from using the family car, takes the car for a drive one night without knowing that one of the car's taillights is not working. When a law enforcement officer conducts a lawful traffic stop to warn the driver of the taillight malfunction and asks the driver's name, the driver provides his older brother's name in an attempt to keep his parents from learning of his activity. The officer first provides a verbal warning to the driver but, upon discovering the driver's deception, also issues the driver a summons for violating the false name statute. *See* Va. Code § 19.2-74 (permitting issuance of summons for Class 1 and Class 2 misdemeanor offenses). Although the driver provided the officer with a false name with the intent to deceive the officer regarding his real identity, thereby violating the plain terms of the false name statute, no vile or depraved conduct occurred. And no independent moral norm was violated. Giving an officer a false name with the intent to deceive, like "refus[ing] to comply" with law enforcement, cannot alone be "categorically immoral." *Ramirez*, 887 F.3d at 705.

17

I also observe that regardless whether the petitioner can demonstrate the actual factual circumstances underlying his offense, circumstances similar to those he proffered fall short of meeting the definition of a CIMT.[5]  A lawfully detained defendant initially could intend to deceive an officer regarding his identity, but soon thereafter have a change of heart and give his true name without causing any impediment to that officer's duties or harm to another.  The elements of the statute would have been met in these circumstances, without any vile or depraved conduct or violation of an independent moral norm.

Additionally, contrary to the government's position, the lack of a written record demonstrating the "factual basis" for a conviction cannot serve as an impediment here.  As noted above, a conviction under the false name statute is a Class 1 misdemeanor.  The facts underlying such minor offenses charged in state courts in Virginia are not memorialized in a written record.  Instead, these cases routinely are heard in a general district court, commonly referred to in Virginia as a court "not of record."  There, the trial judge merely records the defendant's plea and the court's disposition of the case.  Also, such offenses rarely are addressed in decisions issued by the Court of Appeals of Virginia or the Supreme Court of Virginia.  Thus, we should not hold the petitioner to an impossible standard of "demonstrat[ing] that [Virginia] actually prosecutes" conduct under the false name statute in cases in which the intended deception does not result in the impairment or obstruction

---

[5] The majority explains that because the false name statute requires an intent to deceive, petitioner could not have been convicted if he lacked that intent and mistakenly provided a false name.  Although I agree with that statement, I disagree with the majority's singular focus that a petitioner's "intent to deceive" alone makes any violation of the false name statute vile and depraved and, thus, "morally turpitudinous."  Opi at 11.

of an important government function, or any other harm. *Moncrieffe v. Holder*, 569 U.S. 184, 205-06 (2013) (discussing *Gonzalez v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (holding that there must be a "realistic probability, not a theoretical possibility" of prosecution for the asserted conduct)). "[W]hen the state, through plain statutory language, has defined the reach of the state statute" to include conduct that does not categorically match the definition of a CIMT, "the categorical analysis is complete." *Gordon v. Barr*, 965 F.3d 252, 260 and n.8 (4th Cir. 2020).

In sum, I would hold that a conviction under the false name statute does not categorically qualify as a CIMT. The false name statute requires only an intent to deceive an officer as to one's identity, and nothing more, in the context of a lawful detention. *See Arias v. Lynch*, 834 F.3d 823, 828 (7th Cir. 2016) (observing that "troubling results . . . would follow from a rule that every crime that involves any element of deception involves moral turpitude"); *Bobadilla v. Holder*, 679 F.3d 1052, 1058 (8th Cir. 2012) ("We reject the notion, all too prevalent in government circles, that every person who intentionally makes a government official's task more difficult is guilty of 'inherently base, vile, or depraved' conduct. . . . This is the type of crime where the risk of both over-inclusiveness and under-inclusiveness is real."). Manifestly, the act of giving a false name to a law enforcement officer with the intent to deceive the officer regarding one's identity does not necessarily involve vile or depraved conduct that independently violates a moral norm. *See Nunez-Vasquez*, 965 F.3d at 285 n.8. I would grant the petition for review.